Rovilma DIAMOND, Plaintiff–
Appellant,

v.

COLONIAL LIFE & ACCIDENT
INSURANCE COMPANY,
Defendant–Appellee.

No. 04–2093.

United States Court of Appeals,
Fourth Circuit.

Argued May 24, 2005.

Decided July 25, 2005.

**ARGUED:** Chalmers Carey Johnson, Charleston, South Carolina, for Appellant. Katherine Dudley Helms, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Columbia, South Carolina, for Appellee. **ON BRIEF:** William L. Duda, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Columbia, South Carolina, for Appellee.

Before WIDENER and MOTZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge MOTZ wrote the opinion, in which Judge WIDENER and Senior Judge HAMILTON joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge.

Rovilma Diamond sued her former employer, Colonial Life & Accident Insurance Company, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act and 42 U.S.C.A. § 1981 (West 2003). For the reasons that follow,

we affirm the order of the district court granting Colonial summary judgment on both claims.

## I.

### A.

Shortly after graduating from Hampton University in 1992 with a degree in merchandising, Diamond, an African–American woman, began working at Colonial as a customer service specialist. In 1995, Colonial promoted Diamond to the position of disability claims specialist. While working at Colonial, and with help from its academic assistance program, Diamond pursued a master's degree in public administration, which she earned in 1998. Subsequently, Colonial promoted Diamond to the position of senior customer care specialist. In that role she reported to Randy Stober, a white man, who reported to Mike Glover, an African–American man and the assistant vice president of the claims department.

In the summer of 2000, three claims specialists—two African–American women (including Dee Goodman) and one white woman—applied to telecommute, i.e., work from home. Stober refused Goodman's request to telecommute, but granted the white woman's request even though she, unlike Goodman, had been disciplined a few months earlier. Following the denial of her request, Goodman "made an internal report of discrimination . . . and listed Diamond as a supporting witness." Brief of Appellant at 6.[1]

In August 2000, Glover posted an opening for a position as accident and health manager. Diamond and two white women asked to be considered for the position. Due to budget concerns, however, Glover did not fill the position at that time. In

January 2001, Diamond began searching for other employment.

In February 2001, Glover again posted the opening for accident and health manager. Glover informed Debbie Hamrick, a white woman and the director of accident and health and life claims, that Diamond and the two white women who had previously expressed interest in the position should be considered. In addition, Cindy Scott, a white woman, and four white men applied for the position. The stated qualifications for the position were: (1) "[p]rior management experience preferred," (2) "[c]ollege degree preferred, but will consider equivalent claims experience," and (3) "[u]nderstanding of Colonial Products, Services, Markets, etc." In addition, Colonial generally required an employee to have 18 months of work experience at Colonial in order to be eligible for a promotion, although this requirement could be waived if the employee was seeking a promotion within the same department.

Hamrick and Blanche Chisholm, an African–American woman who was an accident and health manager, interviewed six of the eight applicants, including Diamond and Scott. Following each interview, Hamrick and Chisholm rated the applicant on the basis of nine characteristics, such as "operations knowledge, business sense, decision making, communication skills, high degree of initiative, flexibility/openness, leadership skills, hands-on manager, and interpersonal skills." Hamrick and Chisholm agreed that, based on their rating system, Diamond ranked fourth among the applicants while Scott ranked first. The contemporaneous notes of Hamrick and Chisholm indicate that they believed Diamond had strong communication skills and technical knowledge, but that she needed to develop "interpersonal skills, initiative, coach-

1. Goodman ultimately resigned and sued Colonial for race discrimination and retaliation. The district court granted Colonial summary judgment in that case.

ing/counseling." Although Scott lacked a college degree and had not worked for Colonial for eighteen months, Hamrick and Chisholm rated her higher than Diamond in all nine categories, noting her particular strength in "decision making, leadership, interpersonal skills, communication." After the interviews, Hamrick spoke with the managers of each of the top four applicants to discuss the applicants' ratings; none of the managers disagreed with the rankings. Hamrick also discussed the rankings with Glover, who agreed with them. In March 2001, Colonial awarded the position to Scott.

Shortly thereafter, Diamond lodged internal complaints of race discrimination and retaliation. In April 2001, unsatisfied with Colonial's response, she filed a charge of discrimination with the South Carolina Human Affairs Commission. In response to that charge, Diamond claims, she "began to experience negative changes at work," including complaints about her work, being left unprepared for meetings, having her phone calls monitored and certain emails deleted, heightened surveillance, and negative performance reviews. Brief of Appellant at 10–12. On May 29, 2002, Diamond resigned from Colonial and accepted a job with the South Carolina Budget and Control Board.

### B.

On April 23, 2002, a month before resigning, Diamond filed a complaint in state court alleging wrongful denial of a promotion and retaliation in violation of Title VII and 42 U.S.C.A. § 1981. Colonial removed the case to federal court and moved for summary judgment.

On October 21, 2003, the magistrate judge issued a report and recommendation in which he recommended granting Colonial's motion for summary judgment on both the failure to promote and retaliation claims. Diamond timely filed an objection

to the magistrate judge's report, specifically objecting to his disposition of both claims. Diamond also argued in her objection that the Supreme Court's recent decision in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), rendered the "shifting burden test ... no longer ... applicable" in Title VII cases at the "[s]ummary [j]udgment stage."

The district court ordered the magistrate judge to "take a fresh look" at Diamond's suit "in light of *Desert Palace.*" The court also directed the magistrate to order further briefing and issue a "new" report and recommendation. The magistrate promptly ordered the parties to file supplemental briefs. In Diamond's brief, she specifically addressed the impact of *Desert Palace* on her race discrimination claim. As to her retaliation claim, she stated that she "request[ed] de novo consideration of the arguments set forth in the opposing memoranda and objection and response currently on file."

On June 10, 2004, the magistrate judge issued his second report and recommendation, in which he again recommended granting summary judgment to Colonial on Diamond's failure to promote claim. Regarding the retaliation claim, the magistrate judge erroneously said: "Although Diamond asks that summary judgment be reconsidered for both her claims (failure to promote and retaliation) in her objections to the [report and recommendation], she argues only that her failure to promote claim survive [sic] summary judgment in her most recent memorandum." For this (incorrect) reason, the magistrate judge concluded that "only Diamond's failure to promote claim will be addressed." Diamond timely objected to the magistrate's recommendation as to her failure to promote claim, but did not file an objection to

the report's treatment of her retaliation claim.

The district court, after conducting a de novo review of Diamond's failure to promote claim, granted Colonial summary judgment on that claim. The court also granted Colonial summary judgment on Diamond's retaliation claim, but did not review the claim de novo review because the court concluded that Diamond had not preserved an objection to the magistrate judge's resolution of that claim. The court explained:

> [I]n the June 10, 2004 [report and recommendation], the Magistrate Judge observed that although Diamond asked in her objections to the initial October 1, 2003 [report and recommendation] that summary judgment be reconsidered for both the discrimination and retaliation claims, in her most recent memorandum she argues only that her failure to promote claim survives summary judgment. This court notes that Diamond did not dispute that Magistrate Judge's observation in her response to the June 10, 2004 [report and recommendation] and thus this court adopts the reasoning contained in the initial [report and recommendation] and grants Colonial Life's Motion for Summary Judgment on the retaliation claim.

## II.

Initially, Diamond argues that we should remand her case to the district court so it can "reconsider" her retaliation claim. Brief of Appellant at 18. Because Diamond failed to object to the magistrate judge's disposition of her retaliation claim in his *second* report, the district court had no obligation to conduct a de novo review of the retaliation claim and Diamond waived her right to appellate review of that claim. *See Wells v. Shriners Hosp.,* 109 F.3d 198, 201 (4th Cir.1997).

■ The Federal Magistrates Act requires a district court to "make a de novo determination *of those portions* of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1) (West 1993 & Supp.2005) (emphasis added); *accord* Fed.R.Civ.P. 72(b) ("The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, *of any portion* of the magistrate judge's disposition to which *specific written objection has been made* ....") (emphases added). By contrast, in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72 advisory committee's note.

■ We have long held that "the [Federal Magistrates] Act can[not] be interpreted to permit a party ... to ignore his right to file objections with the district court without imperiling his right to raise the objections in the circuit court of appeals." *United States v. Schronce,* 727 F.2d 91, 93–94 (4th Cir.1984); *see also Page v. Lee,* 337 F.3d 411, 416 n. 3 (4th Cir.2003). The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn,* 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Absent such a rule, litigants would have little incentive to object in the district court, *Wells,* 109 F.3d at 200, and "any issue before the magistrate would be a proper subject of judicial review," *Thomas,* 474 U.S. at 148, 106 S.Ct. 466. The Magis-

trates Act does not contemplate such an obviously inefficient use of judicial resources: "Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution." *Id.* at 153, 106 S.Ct. 466.

■ Here, Diamond filed an objection to the magistrate judge's disposition of her retaliation claim in his *initial* report and recommendation. But, as she concedes, the district court then ordered the magistrate judge to prepare a "new" report and recommendation and she failed to file an objection to the magistrate judge's recommended disposition of her retaliation claim in that "new" report. *See* Brief of Appellant at 15. Notwithstanding these concessions, Diamond argues that because the magistrate judge's second report was to be "new," in refusing to consider her retaliation claim afresh the magistrate judge "did not do what [the district court] ordered him to do," and, thus, "[t]here [was] nothing" for Diamond "to object to." *Id.* at 16–17. For this reason, she maintains, her initial objection sufficed to trigger the district court's obligation to conduct a de novo review under the Magistrates Act and to preserve her appellate rights.

We must reject this argument. Despite her initial objection, when Diamond failed to lodge an objection to the magistrate judge's suggested disposition of her retaliation claim in his *second* report, she failed to make the "specific written objection" required to invoke de novo review by the district court. *See* Fed.R.Civ.P. 72(b). The fact that the record shows that the magistrate judge inaccurately characterized Diamond's brief as failing to address the retaliation claim does not relieve Diamond of her obligation to object to that error. By not objecting to the magistrate's mischaracterization of her brief, Di-

amond failed to put the district court on notice that she sought de novo review of the retaliation claim. As a result, just as Rule 72 and the Federal Magistrates Act contemplate, the district court did not "focus attention on [that] issue[ ]." *Thomas,* 474 U.S. at 147, 106 S.Ct. 466. In the absence of "specific written objection," the district court was free to adopt the magistrate judge's recommendation on the retaliation claim without conducting a de novo review, and Diamond "waive [d][her] right to an appeal" on that claim. *See Wells,* 109 F.3d at 201.

Accordingly, we affirm the district court's grant of summary judgment on Diamond's retaliation claim.

### III.

Diamond's primary argument regarding her failure to promote claim is that to survive summary judgment she *only* needed to make out a prima facie case of discrimination. She asserts that *Desert Palace* "makes it clear that ... all Title VII cases are to be analyzed as mixed motive cases" and that the "shifting burden" test first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "is actually an affirmative defense ... and can not be used as a basis for dismissal of a Title VII case." Brief of Appellant at 19, 22. She further contends that in *Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277 (4th Cir.2004) (en banc), we recognized that as a result of *Desert Palace* the "shifting burden" test no longer applies at the summary judgment stage and a plaintiff can "avert" summary judgment simply by establishing a "prima facie case" of discrimination. Brief of Appellant at 23–24.

Diamond also maintains, apparently in the alternative, that the district court erred in granting Colonial's motion for summary judgment because she estab-

lished a prima facie case *and* showed that Colonial's reasons for refusing to promote her were pretextual. *See* Brief of Appellant at 28–30.

### A.

■ In 1991, after the Supreme Court had recognized that employment decisions motivated by both legitimate and discriminatory reasons—so-called "mixed-motive" decisions—are actionable under Title VII, *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion), Congress amended the Civil Rights Act to provide explicitly for liability in mixed-motive cases. *See* 42 U.S.C.A. § 2000e–2(m) (West 2003); *Desert Palace,* 539 U.S. at 94, 123 S.Ct. 2148. Pursuant to the 1991 amendments (also known as the Civil Rights Act of 1991), a plaintiff succeeds on a mixed-motive claim if she "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m). Once such a showing has been made, the employer cannot escape liability. However, through use of a limited affirmative defense, if an employer can demonstrate that it "would have taken the

same action in the absence of the impermissible motivating factor," it can restrict a plaintiff's damages to injunctive and declaratory relief, and attorney's fees and costs. 42 U.S.C.A. § 2000e–5(g)(2)(B).[2]

■ In the wake of *Price Waterhouse* and the 1991 Act, several courts of appeals, including this one, required Title VII plaintiffs to present *direct* evidence of discrimination to succeed on a mixed-motive theory. *See Desert Palace,* 539 U.S. at 95, 123 S.Ct. 2148; *Taylor v. Virginia Union Univ.,* 193 F.3d 219, 232 (4th Cir. 1999) (en banc). In *Desert Palace,* however, the Supreme Court abrogated these holdings, concluding on the basis of the plain language of § 2000e–2(m) that "direct evidence of discrimination is not required in mixed-motive cases." 539 U.S. at 101–02, 123 S.Ct. 2148. As in criminal cases and other civil cases, the Court held, circumstantial evidence is sufficient. *Id.* at 99–100, 123 S.Ct. 2148.

■ Diamond argues that the *Desert Palace* holding means that all employment discrimination cases should be analyzed as mixed-motive cases[3] and that Title VII plaintiffs can survive summary judgment simply by presenting a "prima facie case." She further argues that our en banc deci-

---

**2.** Congress enacted § 2000e–5(g)(2)(B) in part to reject the holding of *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. 1775 (plurality opinion), that an employer could avoid liability entirely by proving that it would have made the same decision even if it had not taken the impermissible factor into account. *See* H.R.Rep. No. 102–40(I), at 45–46 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 583–84 (stating that, because of this holding, "[t]he effectiveness of Title VII's ban on discrimination on the basis of race, color, religion, sex or national origin has been severely undercut").

**3.** Diamond also contends that she pleaded a mixed-motive, and not a single-motive, claim. But her complaint does not specify whether she asserts that Colonial refused to promote

her because of both legal and discriminatory reasons or solely because of illegal discrimination. Whether Diamond pled a mixed-motive claim is irrelevant, however, because "a case need not be characterized or labeled at the outset. Rather, the shape will often emerge after discovery or even at trial. Similarly, the complaint itself need not contain more than the allegation that the adverse employment action was taken because of a protected characteristic." *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 856 n. 7 (9th Cir.2002) (en banc) (citing *Price Waterhouse,* 490 U.S. at 247 n. 12, 109 S.Ct. 1775 (plurality opinion)), *aff'd,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Moreover, as explained within, Colonial was entitled to summary judgment regardless of whether Diamond asserted a mixed-motive or single-motive claim.

sion in *Hill* recognized this dual effect of *Desert Palace*. These arguments are meritless.

■■ As we explained in *Hill*, a Title VII plaintiff may "avert summary judgment ... through *two* avenues of proof." 354 F.3d at 284 (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Id.* Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e–2(m). Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas* ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill,* 354 F.3d at 285.

■■ In establishing this pretext framework, the Supreme Court explained that the "broad, overriding interest" of Title VII, "shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ra-

cially neutral employment and personnel decisions." *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. 1817. The pretext framework advances that interest by "compensat[ing] for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse,* 490 U.S. at 271, 109 S.Ct. 1775 (O'Connor, J., concurring in the judgment).[4] The Supreme Court constructed the elements of the prima facie case to give plaintiffs who lack direct evidence a method for raising an inference of discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Costa,* 299 F.3d at 855. But, once an employer rebuts the prima facie case with a legitimate, nondiscriminatory reason for the employment action, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks and citations omitted). Thus, in Title VII cases, the "prima facie case," a mechanism peculiar to the pretext framework, is never by itself sufficient to permit a plaintiff to escape an adverse summary judgment ruling except in the rare instance when an "employer is silent in the face of the presumption" it raises. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.[5] Even then, of course, as in every

---

4. In the event that a plaintiff has direct evidence of discrimination or simply prefers to proceed without the benefit of the burden-shifting framework, she is under no obligation to make out a prima facie case. *See, e.g., Costa,* 299 F.3d at 855. Indeed, the *McDonnell Douglas* framework is of little value when direct evidence of discrimination is available. *See Price Waterhouse,* 490 U.S. at 271, 109 S.Ct. 1775 (O'Connor, J., concurring in the judgment) (noting that the Supreme Court has suggested that the burden-shifting framework is inapplicable where a plaintiff presents direct evidence of discrimination).

5. Notwithstanding our clear recognition in *Hill* of these principles and the continued vitality of the *McDonnell Douglas* framework, Diamond insists that after *Desert Palace* that framework is "no longer a tool which can be used to dismiss a Title VII case at the [s]ummary [j]udgment stage." Her argument finds no support in the text of *Desert Palace,* which does not even mention *McDonnell Douglas.* Moreover, since deciding *Desert Palace,* the Supreme Court has continued to invoke the burden-shifting framework in pretext cases. *See Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 517 n. 3, 518, 157 L.Ed.2d 357 (2003); *see also Johnson v. California,* ——

employment discrimination case alleging disparate treatment, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. 1089.

## B.

■ Applying these governing principles to the case at hand, we must affirm the grant of summary judgment to Colonial because whether Diamond alleges that race was a motivating factor or the sole reason for Colonial's decision not to promote her, she has failed to raise a genuine issue of material fact as to the ultimate question, i.e., whether Colonial intentionally discriminated against her.

■ The magistrate judge and the district court disagreed as to whether Diamond had established that she was qualified for the position and, thus, whether she had made out a prima facie case of race discrimination.[6] Diamond argues at length that she was qualified to be an accident and health manager, noting both that she had a college degree and had been in her position for 18 months while other applicants had not. For purposes of this appeal, we will assume that Diamond was qualified and made out a prima facie case of race discrimination. *Cf. Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 ("The burden of establishing a prima facie case . . . is not onerous."). But a prima facie case alone is not sufficient to warrant reversal of the

district court's summary judgment ruling because Colonial has asserted legitimate, nondiscriminatory reasons for not promoting Diamond, specifically, that based on a multi-factored rating system, two managers—Hamrick, a white woman, and Chisholm, an African–American woman—rated Scott the best candidate, and Glover, the African–American assistant vice president of the claims department, agreed with that assessment.

Diamond claims that Colonial's failure to "recognize [her] prior experience as management experience should be considered evidence of discriminat[ory] intent," and that this evidence is sufficient to show that Colonial's stated reasons for not promoting her were a pretext for discrimination. Brief of Appellant at 28. We disagree. Assuming *arguendo* that Diamond had more management experience than Scott and that Colonial failed to recognize the extent of Diamond's experience, we are unable to conclude that Diamond has demonstrated pretext. According to the stated qualifications for the accident and health manager position, some prior management experience was "preferred," but such experience was not regarded as essential. Thus, while management experience was a factor to be considered in awarding the promotion, it clearly was not intended to be dispositive.

Moreover, Diamond has failed to rebut the reasons documented in contemporaneous notes as to why Colonial awarded the promotion to Scott. *Cf. EEOC v. Sears*

---

U.S. ——, —— n. 7, 125 S.Ct. 2410, 2418 n. 7, 162 L.Ed.2d 129 (2005). Our sister circuits have also rejected the view that *Desert Palace* nullified the *McDonnell Douglas* framework. *See, e.g., Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 340 (5th Cir.2005); *Strate v. Midwest Bankcentre, Inc.,* 398 F.3d 1011, 1018 (8th Cir.2005); *Cooper v. Southern Co.,* 390 F.3d 695, 725 n. 17 (11th Cir.2004).

**6.** To demonstrate a prima facie case of racial discrimination in a failure to promote case, a

plaintiff must show that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir.2005).

*Roebuck and Co.,* 243 F.3d 846, 852–53 (4th Cir.2001). That is, she has failed to address the fact that on each of the nine factors considered by Hamrick and Chisholm—"operations knowledge, business sense, decision making, communication skills, high degree of initiative, flexibility/openness, leadership skills, hands-on manager, and interpersonal skills"—Scott scored higher than Diamond, and each manager to review their applications, including two African–Americans, agreed that Scott was the superior candidate.

Diamond does not suggest any flaw in the rating system or that Hamrick and Chisholm failed to conduct fair evaluations. Nor does she contest the results of those evaluations. Thus, even if we assume that Diamond had more management experience than Scott, in the face of Colonial's nondiscriminatory—and unanswered—explanation for not promoting her, we must conclude that Diamond has failed to forecast sufficient evidence of pretext to "avert[ ] summary judgment" in Colonial's favor. *Hill,* 354 F.3d at 285.

### IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*