**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1507

MATTHEW PERKINS,

Plaintiff - Appellant,

v.

INTERNATIONAL PAPER COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Terry L. Wooten, Senior District Judge.  (3:16-cv-00172-TLW)

Argued:  May 9, 2019                                     Decided:  August 27, 2019

Before NIEMEYER, KEENAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**ARGUED:** Shannon Marie Polvi, CROMER BABB PORTER & HICKS, LLC, Columbia, South Carolina, for Appellant. Matthew J. Gilley, FORD & HARRISON LLP, Spartanburg, South Carolina, for Appellee. **ON BRIEF:** Kristin S. Gray, FORD & HARRISON LLP, Spartanburg, South Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

Alleging race-based discrimination, Matthew Perkins brought claims for: (1) disparate treatment, (2) hostile work environment, (3) constructive discharge and (4) retaliation against International Paper Company ("IPC") under Title VII of the Civil Rights Act of 1965, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII").[1] After discovery, IPC moved for summary judgment. The district court adopted the magistrate judge's recommendation to grant IPC's motion concluding there were no genuine issues of material fact as to any of his claims. Perkins now appeals that order of summary judgment. After a de novo review, we affirm.

I.

In 1984, Perkins, an African American male, began working as a technician at what is now IPC's Eastover paper mill (the "Eastover Mill").[2] Perkins continued working there until 2014, when he retired. Perkins alleges in his Amended Complaint that, during his time at IPC, he experienced race-based discrimination. Our review of the record indicates that

---

[1] In the amended complaint, Perkins includes hostile work environment, constructive discharge and disparate treatment within his Title VII discrimination cause of action. However, because the magistrate judge, the district court and the parties treated the disparate treatment, hostile work environment and constructive discharge as separate causes of action, we will do so as well. Perkins also brought a separate cause of action for retaliation.

[2] The mill, which produces paper and pulp, is located in the small South Carolina town of Eastover. Founded in 1880, Eastover is twenty miles southeast of South Carolina's capitol city of Columbia, near the convergence of the Wateree and Congaree Rivers. In fact, the name Eastover was selected because the town was "over to the east" of the Congaree River.

Perkins' evidence of this alleged discrimination falls into three categories: (1) mistreatment in various ways compared to white employees; (2) improper denials of requests for promotions; and (3) racially offensive conduct and statements at work.

In reviewing the details of these categories, we begin with Perkins' allegations of mistreatment compared to white employees. Perkins testified that in its program to provide financial assistance to employees who pursued higher education, IPC increased the amount of assistance several years after his benefits had been paid. Perkins said it was unfair for IPC to deny his 2007 request for retroactive payment of the new amount when it approved the new amount for current participants, including white employees. Perkins also testified that in his department's 2007 ranking of the technicians for feedback purposes, most of the technicians ranked near the bottom, including himself, were African Americans and females. Additionally, Perkins said the assignment of employees to the twelve-hour shift on the "wet end" of a machine and the shorter shift on the "dry end" of the same machine, which began in 2010, was unfair to African Americans. Perkins testified this practice stopped after he reported it. Last, Perkins testified that after the implementation of a policy monitoring overtime in 2013, he was questioned about the reasons he was working overtime, but never saw his white co-workers asked the same questions. Perkins' co-workers also testified that the IPC workplace rules and practices were enforced more stringently against African American employees than white employees and that some white employees did not talk to and otherwise shunned African American employees.

Perkins' second category of evidence involves the denials of requests for promotions. Although he offered minimal detail on the race or the qualifications of the

3

employees who received the positions, Perkins testified that, between 2007 and 2013, he was passed over for several promotion opportunities. Perkins' co-workers also said that white employees were promoted more often than African American employees.

The record reveals a third category, racially offensive conduct and statements. Perkins acknowledged no such statements were made to him or even in his presence while he was at IPC. But Perkins heard second-hand about a white employee making and wearing a KKK hat at work in 2006. Also, several years before 2014, he was told that an African American female employee overheard a white employee, when given a work assignment, complain that he was being asked to work like a n*****.

In addition, Perkins' co-workers testified about incidents about which Perkins had no knowledge. An African American female co-employee testified she was told by other technicians that a white male technician referred to her on multiple occasions as a black b***h and a n*****. Two other African American co-employees testified that an African American male employee told them of an instance where a white male employee told the African American male he had come through the "white door" and needed to go back out of the building and enter through the "black door." The co-workers did not testify as to when these comments were made.

Against this backdrop, Perkins testified about his departure from IPC. After approximately 30 years at IPC, in the Spring of 2014, Perkins began considering retirement. He also explored other employment options. Specifically, Perkins applied for employment as a full-time case worker with a non-profit organization for which he had volunteered in the past.

Later, while still at IPC, one of the managers in his department accused Perkins of failing to complete his job responsibilities the prior week. According to Perkins, the uncompleted work was another worker's responsibility, not his. Perkins testified that because of this incident, he felt IPC would get rid of him if he did not leave. While he did not officially retire until two and one-half months later, Perkins never returned to work. During the time period from the day he stopped working until his retirement, Perkins received accumulated vacation and holiday leave pay. Just three days after the accusation about his job responsibilities, Perkins began full-time employment with the non-profit.

After he stopped working at IPC, an IPC human resources manager conducted Perkins' exit interview. In the interview, Perkins said that his job at IPC was the best job he ever had, but the opportunity came at a significant price. He reported the treatment outlined above. Perkins also said educated minorities cannot make it in his former department. He claimed that his department manager covered up for and protected another employee, was a hot head, did not listen, never gave him any feedback and did not follow procedures. Perkins said no one at IPC thanked him for working during an ice storm. Perkins claimed he left IPC because he had no ability to provide a positive influence, was devalued, could not sleep at night, and experienced racism and prejudice. Perkins added that high blood pressure and shoulder pain were additional reasons he left.

Perkins later filed a complaint with IPC's Ethics Helpline and met with the Eastover Mill Manager. In both the complaint and meeting, Perkins repeated the allegations of

5

discrimination he reported in his exit interview.[3] On November 1, 2014, Perkins officially retired from IPC.

On January 8, 2015, Perkins filed a charge of discrimination with the South Carolina Humans Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, retaliation and disparate treatment. Perkins alleged that from April 1, 2014, through November 1, 2014, he was subjected to disparate terms and conditions. After receiving his right-to-sue letter, Perkins filed a lawsuit against IPC in state court. IPC removed the case to federal court and, after discovery, moved for summary judgment. The magistrate judge recommended that summary judgment be granted as to all of Perkins' claims. The district court adopted the recommendation granting IPC's motion for summary judgment. Perkins timely appealed.

## II.

This Court "review[s] the district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 958 (4th Cir. 1996). Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant

---

[3] As a result of Perkins' Helpline complaint, IPC opened an investigation into discrimination at the Eastover Mill and interviewed Perkins along with eleven other employees. After finding no evidence substantiating Perkins' claims, IPC closed the investigation.

6

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If there are genuine issues of material fact, a court should not weigh the evidence. *Id.* at 249. But "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

III.

All of Perkins' claims are based on Title VII. Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2. This provision is sometimes referred to as the "anti-discrimination" provision. In a separate section, Title VII outlaws discrimination based an employee's opposition to conduct made unlawful by Title VII or participation in any Title VII investigation, proceeding or hearing. 42 U.S.C.A. § 2000e-3. This provision is sometimes referred to as the "anti-retaliation"

7

provision. Perkins' claims for disparate treatment, hostile work environment and constructive discharge fall under § 2000e-2. His retaliation claim falls under § 2000e-3.[4]

On appeal, Perkins argues the district court erred in granting IPC summary judgment on each of his claims. With respect to his disparate treatment claim, Perkins argues the district court did not even address this claim, but instead improperly relied on the magistrate judge's decision on timeliness. With respect to the hostile work environment claim, Perkins argues he provided sufficient evidence of a severe or pervasive environment. With respect to his constructive discharge claim, Perkins appears to argue that the same facts that establish a hostile work environment establish a constructive discharge. Last, regarding his retaliation claim, Perkins argues that, much like his disparate treatment claim, the district court largely ignored the claim and granted summary judgment with no legal reasoning. We address these arguments in turn.

---

[4] A plaintiff has two potential avenues to avoid summary judgment in a Title VII discrimination claim. *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 318 (4th Cir. 2005). He may, under what has been referred to as the "mixed-motive" framework, present direct or circumstantial evidence that creates a genuine issue of material fact as to whether an impermissible factor such as race solely or partially motivated the employer's adverse employment decision. *Id.* Or he may proceed under the *McDonnell Douglas* pretext framework. *Id.* The same is true for a Title VII retaliation claim. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Here, the district court appears to have only applied the *McDonnell Douglas* pretext framework. Perkins claims the district court erred in doing so because he presented evidence of both avenues of proof. Perkins has a point. But any mistake by the district court on this issue makes no difference in the outcome of this appeal because Perkins failed to present direct or circumstantial evidence that created a genuine issue of material fact as to whether race solely or partially motivated any alleged adverse employment actions by IPC. The evidentiary shortcomings that justify summary judgment under the *McDonnell Douglas* pretext framework lead to the same result under the "mixed-motive" framework. With that clarification, we will address Perkins' disparate treatment and retaliation claims using the requirements of establishing a prima facie claim.

## A.

We begin with Perkins' disparate treatment claim. In an attempt to prove this claim, Perkins said that from 2007 to 2013, IPC inappropriately denied him several promotions, overtime hours, additional educational benefits and a training opportunity. Perkins also testified that in 2011, IPC gave him an inaccurate evaluation. Perkins further said that he did not receive annual reviews, that he did not have a fair opportunity to compete for manager positions and that he experienced daily and consistent hostile treatment.

Perkins claims this evidence satisfies his burden for a disparate treatment claim and the district court erred by effectively ignoring the claim. It is true that the district court's order contains no independent discussion on the disparate treatment claim. However, it finds that "Plaintiff's objections to the Report did not overcome the Magistrate Judge's analysis which cites to the facts and evidence in the record, and the relevant caselaw." J.A. 62. Regardless of the level of discussion in the district court's order, we affirm the district court because, based on our de novo review, the evidence offered by Perkins fails to create a genuine issue of material fact.

"Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race." *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994). To establish a prima facie case of disparate treatment, Perkins must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

9

At the outset, claims for disparate treatment should be dismissed if not timely filed. Perkins, having filed a Charge of Discrimination with SCHAC and the EEOC on January 8, 2015, may proceed and recover only on deliberate discrimination that occurred within the 300 days of filing his charge. *See Lewis v. Chicago*, 560 U.S. 205, 210, 214–15 (2010); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Therefore, Perkins' disparate treatment claims involving conduct that occurred more than 300 days prior to January 8, 2015—or before March 14, 2014—are untimely. Based on his own testimony, Perkins' claims of disparate treatment for being denied positions, overtime, additional educational benefits and training all took place between 2007 and 2013, and thus are untimely.

In contrast, Perkins' claim that he was denied annual reviews appears to be timely. However, in a disparate treatment claim, a plaintiff must show discrimination that adversely affects the terms, conditions or benefits of employment. *Coleman*, 626 F.3d at 190. Perkins has not offered evidence indicating IPC's failure to give him annual reviews adversely affected the terms, benefits and conditions of his employment. *See Roberts v. Saint Agnes Hosp.,* No. GJH-13-3475, 2015 WL 3932398, at *8 (D. Md. June 25, 2015) *aff'd sub nom. Roberts v. Saint Agnes Hosp./Ascension Health,* 622 F. App'x 255 (4th Cir. 2015). Thus, Perkins' claim about annual reviews fails the third requirement of a disparate treatment claim.

Perkins' claim that the hostile treatment he received at IPC constitutes an adverse employment action also appears timely. But despite that, the magistrate judge's report, which the district court adopted, questioned whether hostile treatment could qualify as an

adverse employment action. Noting that Perkins offered no authority that it could, the report considered Perkins' claims of hostile treatment not as an adverse employment action under his disparate treatment claim, but instead under his hostile work environment claim. Under these circumstances, we agree with the district court. And even if hostile treatment could qualify as an adverse employment action, this claim would fail as a matter of law because we determine today that Perkins failed to offer evidence to create a genuine issue of material fact on his hostile work environment claim.

For the foregoing reasons, the district court properly granted summary judgment on his claim for disparate treatment.

B.

1.

We next turn to Perkins' race-based hostile work environment claim. Perkins asserts this claim under 42 U.S.C. § 2000e-2, the anti-discrimination provision of Title VII. To establish a prima facie Title VII claim for a hostile work environment based on race, Perkins must demonstrate: (1) he experienced unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

The critical issue for us on appeal is the severe and pervasive element. To establish that race-based harassment was sufficiently severe or pervasive under Title VII, Perkins "must show that a reasonable jury could find that the . . . race-based harassment was so

severe or pervasive as to alter the conditions of [Perkins'] employment and create an abusive or hostile atmosphere." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). The severe or pervasive element has both a subjective and objective component. *Id*. Perkins must show that he "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id*.

IPC does not dispute that a reasonable jury could find Perkins subjectively perceived his environment to be abusive or hostile. Our focus then on appeal is whether a reasonable jury could conclude that an objective reasonable person would perceive Perkins' work environment to be hostile or abusive.

"[W]hen determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks omitted). "[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Sunbelt*, 521 F.3d at 315. "[I]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Id*. "[R]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *Id*. at 315–16 (internal quotation marks and citations omitted).

The Supreme Court has also reinforced the steep requirements of a hostile work environment claim. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). The "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).

2.

We now turn back to the evidence offered by Perkins in support of his hostile work environment claim. We will first consider the evidence Perkins offered that he and other African American employees were mistreated compared to white IPC employees and unfairly denied promotions. We will then consider evidence of racially offensive conduct and statements made to and in the presence of other IPC employees that Perkins knew about while at IPC. We will last consider racially offensive statements made to other IPC employees that Perkins neither witnessed nor was aware.

a.

Regarding mistreatment compared to white employees, Perkins testified IPC denied his request for retroactive application of the new amount of education benefits when it

13

approved the new amount for current participants, including white employees. Perkins testified that most of the employees at the bottom of his department's list ranking technicians were African Americans and females. Perkins also testified the assignment of employees to the twelve-hour shift on one portion of a machine and to the shorter shift for a different job on that same machine was unfair to African Americans. Last, Perkins testified he never saw white employees questioned about overtime like he was. Other IPC employees testified that African American employees were treated less favorably than white employees in that the IPC workplace rules and practices were enforced more stringently against African American employees than white employees and that some white employees did not talk to and otherwise shunned African American employees. In addition, Perkins testified that he was passed over for several promotion requests. He and other IPC employees also testified more generally that white employees were promoted more often than African American employees.

The handful of incidents Perkins described occurred between 2007 and 2013. Those incidents, while no doubt serious to Perkins, from an objective perspective cannot reasonably be described as either frequent, physically threatening or humiliating. Further, Perkins does not allege the incidents interfered with his ability to perform his job. And the evidence offered by Perkins' co-workers is of the same character. Thus, considering the evidence in the light most favorable to Perkins, we agree with the district court that this

14

evidence does not rise to the level of severity and pervasiveness required by Supreme Court and Fourth Circuit precedent to constitute a hostile workplace.[5]

b.

Next, looking at the evidence of racially offensive conduct and statements of which Perkins was aware, Perkins' Amended Complaint does not refer to these incidents. Likewise, they were not mentioned by the magistrate judge or the district court and received scant attention by the parties in their briefs. But this evidence is plainly in the record and was addressed by the parties at oral argument without any waiver or forfeiture objection. While not required to do so, we feel it is appropriate to address this alleged evidence here.

Perkins is clear that no one made racial slurs or racially offensive statements to him. But while at IPC, Perkins learned of two incidents of racially offensive conduct by white co-workers. While this Court has held that the primary focus in the hostile work environment analysis is on the plaintiff's experience, evidence of how others were treated in the same workplace can be relevant to a hostile work environment claim. *E.E.O.C. v. Sunbelt*, 521 F.3d at 317; *Ziskie v. Mineta*, 547 F.3d 220, 225 (4th Cir. 2008); *Jennings v. University of North Carolina*, 482 F.3d 686, 692 n.1, 697–98 (4th Cir. 2007); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). Further, the fact that an employee

---

[5] Unlike claims for disparate treatment and retaliation, the continuing violation doctrine applies to a hostile work environment claim. *See Morgan*, 536 U.S. at 117; *see also Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 223, n.5 (4th Cir. 2016). Thus, the timeliness issues discussed regarding Perkins' disparate treatment and retaliation claims do not apply here.

15

does not witness statements made to third parties does not bar their consideration. *Jennings*, 482 F.3d at 692 n.1, 697–98. This makes sense because the environment an employee experiences would, in addition to his own treatment, include information he obtains about similar treatment of others even if he did not witness that treatment.

Based on our precedent, the evidence of racially offensive conduct that Perkins heard about second-hand should not be disregarded simply because he did not witness it. Despite that, this evidence does not create a genuine issue of material fact on Perkins' hostile work environment claim because the statements are remote in time relative to each other and to Perkins' decision to leave IPC. In *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753–754 (4th Cir. 1996), we held that a few sexually discriminatory incidents "occurring intermittently over a seven-year period, with gaps between incidents" were not sufficiently pervasive to be actionable. *See also Belton v. City of Charlotte*, 175 F. App'x 641, 656 (4th Cir. 2006) (holding that a few racially discriminatory incidents, including one use of the n-word, were temporally remote from each other, were not sufficiently severe or pervasive to be actionable). Here, Perkins learned of just two incidents during the many years he worked at IPC. Moreover, the two incidents, one in 2006 and the other several years before 2014, took place several years apart and years before Perkins decided to retire. Without condoning it in any way, this conduct is too remote to be pervasive, and, thus, insufficient to create a genuine issue of material fact.

c.

Likewise, the racially offensive statements to co-workers that Perkins did not know about do not create a genuine issue of material fact. Our Court's precedent indicates that

16

experiences of third parties about which a plaintiff was unaware should not be considered in evaluating a hostile work environment's severe or pervasive requirement. In *King v. McMillan*, 594 F.3d 301, 306, 310 (4th Cir 2010), we affirmed the district court's admission of the testimony of two female employees, other than the plaintiff, who described sexual harassment by the same sheriff employer. Critical here, in explaining our decision, we noted: "the [district] court took the precaution of instructing the jury that the testimony of others was relevant to the 'severe or pervasive' element *only if King 'was aware of [the harassment described in the testimony] during the course of her employment*.'" *Id.* at 310 (emphasis added); *see also Bunch v. Shalala*, No. 94–2269, 1995 WL 564385, at *7 (4th Cir. Sept. 25, 1995) (concluding testimony by witness who experienced sexual harassment but did not disclose it to the plaintiff or anyone else could not be used to establish a hostile work environment claim).[6]

Other circuit courts that have considered this issue have reached that same result. *See Adams v. Austal, U.S.A., L.L.C.,* 754 F.3d 1240, 1250 (11th Cir. 2014); *see also Cottrill v. MFA, Inc.*, 443 F.3d 629, 636–37 (8th Cir. 2006); *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d

---

[6] Other precedent from our circuit appears consistent with this conclusion. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004) ("Honor makes much of the treatment of other Booz Allen employees, but we focus on Honor's personal experience."); *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 761 (4th Cir. 1998) ("[A]n individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance."), *vacated on other grounds*, 527 U.S. 1031 (1999); *White v. Fed. Exp. Corp*., 939 F.2d 157, 161 (4th Cir. 1991) (concluding "[o]ur review of the record reveals no evidence which establishes that the alleged racially hostile environment had any effect on John White.").

17

976, 978 (7th Cir. 2000); *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000); *Hirase–Doi v. U.S. W. Commc'ns, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher,* 524 U.S. 775, *as recognized by Doe v. Hutchinson*, 728 F. App'x 829, 833 (10th Cir. 2018). In *Adams*, the Eleventh Circuit explained the reasoning for this conclusion. "The totality of a plaintiff's workplace circumstances does not include other employees' experiences of which the plaintiff is unaware. Courts conduct the objective assessment from the perspective of a reasonable person in the plaintiff's position, knowing what the plaintiff knew." *Adams,* 754 F.3d at 1250. Thus, it follows that "[a] reasonable person in the plaintiff's position is not one who knows what the plaintiff learned only after [his] employment ended or what discovery later revealed." *Id*.

Following our decisions and those of our sister circuits, we confirm that information about which a plaintiff is unaware cannot, by definition, be part of a plaintiff's work experience. Thus, such information is not proper for consideration in evaluating the severe or pervasive requirement of a hostile work environment claim.[7]

Finally, we are mindful that we have primarily discussed the evidence offered by Perkins in categories. In so doing, we do not overlook the requirement that we consider the totality of the plaintiff's experiences in evaluating whether an environment is severe or

---

[7] It is possible that this type of evidence could be probative on other issues. For example, in *King*, we held that evidence of statements made to others about which a plaintiff is unaware may be relevant to other issues such as whether the alleged conduct was on account of sex or race. *King*, 594 F.3d at 310–311.

18

pervasive. *Spriggs*, 242 F.3d at 184 (citing *Harris*, 510 U.S. at 23). Considering the evidence in its totality, for the foregoing reasons, we affirm the district court's order granting IPC summary judgment on Perkins' hostile work environment claim.

C.

Perkins next alleges that his working conditions were so intolerable that he was constructively discharged. Perkins testified he left IPC because he had no ability to provide a positive influence, was devalued and could not sleep at night because of racism and prejudice. Perkins added that high blood pressure and shoulder pain were additional reasons he left. But on appeal, Perkins appears to argue the same evidence that supports his hostile work environment claim also supports and creates a genuine issue of material fact on his constructive discharge claim. Either way, we disagree.

A claim for constructive discharge has two elements. First, a plaintiff must show that his "'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 136 S.Ct. 1769, 1776 (2016) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)). Second, a plaintiff must actually resign because of those conditions. *Id*. at 1777–78. Here, the only issue is the intolerability requirement.

"'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998), *as recognized by Adams v.*

19

*Moore Bus. Forms, Inc.*, 224 F.3d 324, 327 (4th Cir. 2000). Instead, intolerability "'is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign,' . . . that is, whether he would have had *no choice* but to resign." *Id.* (internal citations omitted) (emphasis in original) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

Critically, difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (being yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign); *Matvia v. Bald Head Island Mgmt.*, Inc., 259 F.3d 261, 273 (4th Cir. 2001) (co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card would not have compelled a reasonable person to resign); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F. 3d 239, 244 (4th Cir. 1997) (being ignored by co-workers and top management was insufficient to establish constructive discharge); *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (dissatisfaction with work assignments, perceived unfair criticism and difficult and unpleasant working conditions are not so intolerable as to compel a reasonable person to resign).

Considering the record de novo and reviewing the evidence in the light most favorable to Perkins, we find no error in the district court's conclusion that the evidence offered by Perkins does not create a genuine issue of material fact as to constructive discharge. Proof of constructive discharge requires "a greater severity or pervasiveness of

harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (internal quotation marks omitted); *accord Suders*, 542 U.S. at 146–47. Because we have already concluded that Perkins failed to show he was subjected to a hostile environment, it necessarily follows that he cannot show constructive discharge. *See Helton v. Southland Racing Corp.*, 600 F.3d 954, 960 (8th Cir. 2010) (finding that where the plaintiff failed to show she was subjected to a hostile work environment it necessarily followed that she could not show she was constructively discharged); *see also Dortch v. Cellco P'ship*, 770 F. App'x 643, 646 (4th Cir. 2019) (holding that the district court correctly rejected plaintiff's constructive discharge claim after finding she failed to establish a hostile work environment). Thus, the district court did not err in granting IPC's motion for summary judgment as to Perkins' constructive discharge claim.

D.

Last, we turn to Perkins' retaliation claim. Perkins alleges that IPC retaliated against him for engaging in actions protected by Title VII. Perkins offered evidence that he raised a litany of concerns about work-related issues at IPC. He further testified that, as a result of expressing his concerns, IPC took the following retaliatory actions against him: (1) denied him annual reviews; (2) denied him a fair opportunity to compete for manager positions; (3) caused him to suffer a worsening hostile work environment; (4) denied him overtime; (5) denied him a machine coordinator position; and (6) constructively discharged him.

21

Perkins contends the district court erred in granting summary judgment to IPC on this claim arguing the district court provided no legal reasoning on this issue. Like the disparate treatment claim, the district court did not separately analyze Perkins' retaliation claim. However, it granted summary judgment for the reasons articulated in the magistrate judge's report, which addressed retaliation. Regardless of the extent of analysis below, based on our de novo review, we find Perkins did not create a genuine issue of material fact on his retaliation claim.

In addition to forbidding discrimination based on race, "Title VII prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 255 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie claim of retaliation, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–68 (2006) (redefining the second element to be a "materially adverse action" instead of an "adverse employment action"); *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003) (listing the original factors of a retaliation claim pre-*Burlington*).

Looking more closely at these elements, protected activities can fall into two categories: participation and opposition. *Laughlin,* 149 F.3d. at 259. "An employer may not retaliate against an employee for participating in an ongoing investigation or

proceeding under Title VII, nor may the employer take [an] adverse employment action against an employee for opposing discrimination practices in the workplace." *Id.*

Next considering the materially adverse action requirement, it is different from an adverse employment action required for a disparate treatment claim. As the Supreme Court has held and we have made clear, Title VII's anti-retaliation provision extends beyond retaliatory acts in the workplace. *Burlington*, 548 U.S. at 63; *Strothers v. City of Laurel, Maryland,* 895 F.3d 317, 327 (4th Cir. 2018). Regarding the requirement of a material adverse action, the Supreme Court explained "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted). The Supreme Court emphasized that the "materiality" requirement was necessary to ensure that only significant harms would be actionable. *Id.* at 68–70.

Last, to establish the necessary causation for a retaliation claim, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). At the prima facie stage, a plaintiff does not have to show that "their protected activities were but-for causes of the adverse action." *Strothers*, 895 F.3d at 335. However, he still must make some showing of causation. For example, a plaintiff may establish causation by showing that "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took

23

adverse action against the employee soon after becoming aware of such activity." *Id.* at 335–36.

Turning to the evidence Perkins argues supports his claim, Perkins testified about a lengthy list of alleged protected activities. But quantity does not necessarily equal quality. As the district court properly noted, three of those alleged protected activities—Perkins' exit interview, Ethics Helpline call and meetings with mill management—occurred after he stopped working at IPC and, thus, were not related to any adverse actions towards him.

Further, the only evidentiary source to which Perkins points for most of his other alleged protected activities is the report regarding the Helpline call and interview which occurred after Perkins stopped working at IPC. In other words, Perkins claims that the call and interview are protected activities, but then claims the individual issues he raised during the call and follow up interview are separate protected activities. This, of course, is illogical. Just as the call and interview were not related to his alleged adverse actions because they occurred after Perkins stopped working at IPC, the individual issues raised in the call and interview are equally unrelated.

But Perkins offered evidence of two alleged protected activities that may be appropriate from a timeliness perspective: (1) Perkins' complaint in 2012 that African American employees were treated unfairly in the assignments to the twelve-hour shift for working one part of the winder machine and the shorter shifts for the other part of that same machine, and (2) Perkins' advocacy in the last two years he worked at IPC for a raise for another African American employee. Considering the evidence in the light most favorable

to Perkins, at least for those two activities, Perkins satisfies the first element of a retaliation claim.

Despite that, Perkins has not produced enough evidence to create a genuine issue of material fact about the second or third required elements. With respect to the second element—material adverse actions by IPC—Perkins alleged the six actions listed above. All suffer from fatal deficiencies. First, on the issue of timeliness, Perkins' claims that he was denied overtime, a machine coordinator position and the opportunity to compete for manager positions are all untimely. Having filed a Charge of Discrimination with SCHAC and the EEOC on January 8, 2015, Perkins may proceed and recover only on retaliatory acts that occurred within the 300 days prior to the date of that charge—March 14, 2014. *See Morgan*, 536 U.S. at 110, 114. The alleged acts regarding overtime, the machine coordinator position and manager positions occurred more than 300 days prior to March 14, 2014.

As to his remaining alleged material adverse actions, Perkins cannot establish hostile work environment or constructive discharge are material adverse actions because we have already concluded he has not offered evidence that creates a genuine issue of material fact on those issues. And as to Perkins' claim that he was denied annual reviews, in addition to not offering sufficient evidence that this constituted an adverse employment action (*See Roberts,* 2015 WL 3932398, at *8), he likewise failed to offer sufficient evidence that it was a materially adverse action.

In addition, regarding the third element, Perkins has not linked any of the alleged protected activity to any of the alleged adverse actions from a causation standpoint.

25

Although not clearly stated, Perkins appears to argue that the statement in the Eastover EEOC Charge Investigation Report that his supervisor "feels like there is a group of people that keep others stirred up" shows a causal connection. J.A. 1034. However, that single line of a report issued after Perkins stopped working at IPC does not mention Perkins, nor does it link any of Perkins' alleged protected activities to any of IPC's alleged adverse actions. We are required to and do consider the evidence in the light most favorable to Perkins. But Perkins must, in the end, offer some evidence to support the essential elements of his claim. Here, he did not. There is not a genuine issue of material fact on the required causation necessary for a retaliation claim. Thus, Perkins' retaliation claim should be dismissed.

IV.

Our decision today should not be construed as endorsement of the conduct alleged by Perkins. To the contrary, such alleged conduct is inappropriate. Despite that, it falls short, as a matter of law, of the evidence required to support a Title VII claim. For the reasons set forth above, the ruling of the district court is

*AFFIRMED*.