

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| BEATRICE YOUNG, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85933 |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | Filed: April 2, 2024 |
| CORRECTIONS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County
The Honorable Patrick W. Campbell, Judge**

**Before Division One: Alok Ahuja, P.J., and
Cynthia L. Martin and Thomas N. Chapman, JJ.**

Beatrice Young sued her former employer, the Missouri Department of Corrections (the "Department" or "DOC"), in the Circuit Court of Jackson County. Young alleged that she had been discriminated against, and subjected to harassment, based on her race, sex, and national origin, and in retaliation for her internal complaints of discrimination and harassment. Following a five-day trial, a jury rejected Young's discrimination claims, but awarded her actual and punitive damages for workplace harassment, and for retaliation. The circuit court later awarded Young attorney's fees and costs.

DOC appeals. On appeal, it challenges the judgment for Young on her claim for gender-based harassment occurring prior to August 28, 2017, and the

award of punitive damages to Young on that claim.  DOC also seeks reversal of the attorney's fee award.  We conclude that the Department was entitled to judgment notwithstanding the verdict on Young's claim for pre-August 28, 2017 harassment.  In light of our reversal of that part of the circuit court's judgment, we also reverse the circuit court's award of attorney's fees, and remand to the circuit court for it to consider Young's motion for attorney's fees anew.  Given our disposition, we deny the separate motion Young filed in this Court for attorney's fees on appeal.

## Factual Background

Beatrice Young was born in Liberia, and immigrated to the United States in 2003, when she was eighteen years old.  Young began working for the Department of Corrections in December 2012 as a Corrections Officer I (CO-I).  As a CO-I, Young would provide security to prisoners and prison visitors, conduct searches and inmate counts, and supervise prisoners' movements and activities.

In February 2016, Young was promoted to a Corrections Officer II (CO-II) position with the rank of Sergeant, and was transferred to the Kansas City Reentry Center ("KCRC").  Upon arriving at KCRC, Young was assigned a specific male Lieutenant[1] as her supervisor.

On July 25, 2016, Young made an internal complaint that Lieutenant was discriminating against her based on her national origin, race, and gender.  Among other things, Young alleged that Lieutenant made disparaging remarks about her country of origin, and said that the ethnic food she would bring for lunch "smell[ed] weird."  Young also alleged that Lieutenant undercut her

_____

[1]  Pursuant to § 509.520.1(5), RSMo, we do not provide the names of any witnesses in this opinion.

2

authority as a supervisor by countermanding her scheduling decisions and her instructions to subordinates.

After Young made her complaint, Lieutenant made two performance-related entries in Young's personnel file (referred to as "log notes"). During its investigation of Young's complaints in 2016, DOC's Human Resources staff determined that Lieutenant's log note entries were improper retaliation for Young's internal complaint of discrimination. Human Resources also found that Lieutenant had subjected Young "to harassment and unprofessionalism" by joking about Young's homeland, making changes to the shift rosters Young had prepared, and overriding her directives to her subordinate employees. Human Resources also found that Lieutenant was "less than truthful" during its investigation. Based on its substantiation of Young's complaint, DOC disciplined Lieutenant by suspending him without pay for three days.

On November 9, 2016, Young had instructed CO-I employees that they should check every two hours on an inmate who was in administrative segregation, and offer the inmate bathroom access. A CO-I employee (the "Harassing Officer") complained to other employees about Young's directive. The Harassing Officer called Young a "fat ass cunt," and stated that, "if she . . . wanted the offender . . . to use the bathroom every two hours, she could get off her fat ass and do it herself." Believing that the comment referenced Young, and that it violated DOC policies, another CO-I employee (the "Complaining Officer") made an internal complaint against the Harassing Officer.

Young was not present when the Harassing Officer's comment was made. She heard about the November 2016 statement from the Complaining Officer the

3

same day, however. She testified that news of the Harassing Officer's statement quickly traveled through the employee and inmate populations at KCRC. She testified that "[i]nmates were asking, Ms. Young, I'm so sorry. Ms. Young, I'm so sorry." Young testified that learning of the Harassing Officer's statement made her feel ashamed, embarrassed and humiliated, and that "[i]t made my job so difficult to do." Young testified that the Harassing Officer was part of Lieutenant's clique.

Human Resources staff at DOC investigated the Complaining Officer's internal complaint concerning the November 2016 statement. Human Resources concluded that it could not substantiate that the Harassing Officer's statement referred to Young. No disciplinary action was taken against the Harassing Officer for the November 2016 statement.

Young also contended that other DOC employees made disparaging comments about her, that she was subject to unfounded allegations of misconduct, and that she was given less desirable work shifts and denied a promotion. Among other things, Young presented evidence that another CO-I employee, who was himself African-American, referred to Young as "Africa" over the radio on October 28, 2017. Young asserted that the harassment and adverse employment actions were motivated by her race, gender, or national origin. Young also contended that the Department failed to adequately investigate her claims of discrimination and harassment.

Young resigned from DOC in March 2018.

Young filed her original petition for damages against the Department in the Circuit Court of Jackson County on December 26, 2018. On March 25, 2021, she

filed her Fifth Amended Petition. The Fifth Amended Petition alleged five counts. It alleged that DOC had discriminated against Young based on her race, sex, and national origin; that she was subjected to harassment because of her race, sex, and national origin; and that the Department retaliated against her for complaining about the discrimination and harassment she had suffered.

Young's Fifth Amended Petition made new allegations concerning the actions taken, and statements made, by Lieutenant, which had led to the filing of her internal complaint against Lieutenant on July 25, 2016. The new allegations also alleged that Lieutenant had made negative log entries in her personnel file in retaliation for her July 25, 2016 complaint.

The Department moved to dismiss the new allegations contained in Young's Fifth Amended Petition. It argued that Young's new allegations were time-barred because Young had failed to make a timely administrative complaint to the Missouri Human Rights Commission, and had failed to timely file suit, concerning those allegations.

The circuit court granted DOC's motion to dismiss on May 20, 2021. The circuit court's order noted that, "[i]n Plaintiff's Fifth [Amended] Petition, Plaintiff brings new allegations based on acts which occurred on or about July 25, 2016." The court noted that Young had not filed an administrative complaint with the Missouri Human Rights Commission until November 29, 2017, and had not filed suit until December 25, 2018. Because the Missouri Human Rights Act sets a 180-day deadline for filing an administrative complaint, § 213.075.1, RSMo, and a two-year statute of limitations for filing suit, § 213.111.1, RSMo, the circuit court granted DOC's motion to dismiss. The court's dismissal order specified that

5

"[a]ny claims of Plaintiff arising from facts occurring prior to June 2, 2017, are hereby dismissed with prejudice."[2]

A five-day jury trial began on August 16, 2022. DOC moved for a directed verdict at the close of Young's evidence, and again at the close of all the evidence; both motions were denied.

At the conclusion of the evidence, Young submitted multiple claims to the jury. The verdict directors for Young's claims specified whether the relevant conduct occurred before or after August 28, 2017 – the effective date of significant substantive amendments to the Missouri Human Rights Act. *See* S.B. 43, 99th Gen. Assembly, 1st Reg. Session, 2017 MO. LAWS 410.

Young submitted separate claims for discrimination based on race, sex, and national origin, each based on conduct occurring on or after August 28, 2017. Young argued that the Department had engaged in unlawful discrimination by failing to adequately train her; by failing to promote or rehire her; by changing her work schedule; by placing unfair log notes in her personnel file; and by failing to adequately investigate her claims of harassment and discrimination. The court

---

[2] The timeliness issues underlying the circuit court's May 20, 2021 dismissal order would also seemingly apply to the disparaging comments made by Harassing Officer in November 2016. But the Department did not contend in the circuit court, and does not argue on appeal, that Young's harassment claim based on the November 2016 statement is time-barred. We accordingly do not address any potential timeliness issue. *See Bateman v. Platte Cnty.*, 363 S.W.3d 39, 42 (Mo. 2012) (statute of limitations waived where not pleaded by defendant as an affirmative defense); *Dorris v. State*, 360 S.W.3d 260, 269 (Mo. 2012) (noting that "[a] defendant who does not raise a statute of limitations defense in the trial court waives the right to assert that defense"; citing *Longhibler v. State*, 832 S.W.2d 908, 911 (Mo. 1992)); *Williams v. City of Kansas City*, 641 S.W.3d 302, 329 n. 9 (Mo. App. W.D. 2021) (*en banc*) (holding that "'the timely filing requirement [for administrative complaints under § 213.075.1] is subject to the principles of waiver, estoppel, and equitable tolling'"; quoting *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. App. W.D. 2012)).

6

also submitted a retaliation claim to the jury, based on the same post-August 28, 2017 time period, and the same alleged adverse employment actions.

Young submitted two separate harassment claims to the jury – one for gender-based harassment occurring prior to August 28, 2017 (the claim at issue in this appeal), and one for harassment based on race, sex, or national origin occurring on or after August 28, 2017.

The jury returned defense verdicts on all three of Young's discrimination claims. It found in Young's favor on her claims for harassment both before and after August 28, 2017, and on her claim of post-August 28, 2017 retaliation. For actions occurring before August 28, 2017, the jury awarded Young actual damages of $50,000, and punitive damages of $50,000. For the actions occurring on or after August 28, 2017 (harassment and retaliation), the jury made a single damage award of $45,000 in back pay, $13,000 for past economic losses excluding back pay, and $100,000 in punitive damages. In addition to the actual and punitive damage awards, the circuit court awarded Young attorney's fees of $560,722.50. and litigation costs of $2,956.71. In making its attorney's fee award, the circuit court applied a 1.5 multiplier to the "lodestar" fee calculated from the hours reasonably worked by Young's attorneys, and their reasonable hourly rates.

After the circuit court denied the Department's motion for judgment notwithstanding the verdict, it filed this appeal.

## Discussion

### I.

In its first Point, the DOC argues that its was entitled to judgment notwithstanding the verdict (or "JNOV") on Young's claim for gender-based harassment occurring prior to August 28, 2017. The Department contends that the pre-August 28, 2017 gender-based conduct on which Young's claim depends was not sufficiently severe or pervasive to alter the conditions of her employment, or to create an abusive working environment.

### A.

Young argues that DOC did not properly preserve the submissibility issue. Young emphasizes that the Department's counsel "did not make a specific motion for directed verdict at the close of all the evidence," but instead simply incorporated by reference the grounds for a directed verdict which counsel had discussed in detail at the close of Young's case. Young contends that counsel's abbreviated argument at the close of all the evidence was insufficient to preserve the submissibility issue. We disagree.

"[T]o preserve a submissibility issue for appellate review, it must be included in both a motion for directed verdict at the close of all evidence and a motion for JNOV." *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 395 (Mo. 2018) (citing *Sanders v. Ahmed*, 364 S.W.3d 195, 207 (Mo. 2012)).

> In terms of preservation, a motion for directed verdict at the close of plaintiff's case is necessary only if defendant seeks to have the case determined at that point without introduction of additional evidence. Alternatively, if defendant chooses to put on evidence, . . . [a] motion for directed verdict at the close of all evidence becomes the meaningful motion to preserve the issue . . . . After verdict, of course, a motion for JNOV also is required to preserve the issues raised for appeal.

8

*Sanders*, 364 S.W.3d at 207-08; *see also Mansfield v. Horner*, 443 S.W.3d 627, 638-39 (Mo. App. W.D. 2014) (issue was not preserved where motion for directed verdict was made at the close of plaintiff's evidence and motion for JNOV was filed after trial, but no motion for directed verdict was made at the close of all evidence).

Under Rule 72.01(a), "[a] motion for a directed verdict shall state the specific grounds therefor." "Where a motion for directed verdict does not contain a specific argument, that argument is not preserved for appeal." *Penzel Constr. Co. v. Jackson R-2 Sch. Dist.*, 635 S.W.3d 109, 132 (Mo. App. E.D. 2021). "Mere conclusions and 'bare generalities' are insufficient to preserve an error for our review." *Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 99 (Mo. App. W.D. 2012). The Supreme Court has made clear, however, that "the standard for specificity in a challenge to submissibility raised in a motion for directed verdict 'is not a demanding one.'" *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 476 (Mo. 2021) (quoting *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. 2019)). Illustrating the forgiving standard which the courts apply, in *Sanders* the Supreme Court held that an oral directed-verdict motion was sufficient where counsel merely asserted that "[w]e think plaintiff failed to make a submissible case on issues of negligent causation." 364 S.W.3d at 208. The Court concluded that "[t]he motion might have been more specific but was sufficient to preserve the issue." *Id.*

In its motion for directed verdict at the close of plaintiff's evidence, DOC specifically argued, with a citation to relevant caselaw, that the acts on which Young relied to prove her harassment claims "were not severe or pervasive

9

enough.  Sporadic knowledge [*sic*], use of abusive language is not enough to support severe or pervasive harassment . . . .  Even vile or inappropriate behavior may be insufficient."  The oral directed-verdict motion the Department made *at the close of plaintiff's case* would plainly have been sufficient to preserve the submissibility issue, if the Department had put on no evidence itself.

After putting on its own evidence, DOC again moved for a directed verdict. With regard to Young's harassment claims, DOC's counsel stated that "I would like to incorporate my reasons that we had at the close of plaintiff's evidence. . . . Again, I would like to reincorporate our arguments for directed verdict for hostile work environment and retaliation."  Neither the circuit court, nor Young's counsel, took issue with the manner in which the Department stated its submissibility objections, and the court overruled the directed-verdict motion on the merits.  DOC then repeated its argument against submissibility of Young's pre-August 28, 2017 harassment claim, in detail, in its written post-trial motion for judgment notwithstanding the verdict.

The Department's motion for directed verdict at the close of the evidence was sufficient to preserve the submissibility issue.  In particular, the Department's incorporation by reference of arguments it had made less than twenty-four hours earlier, at the close of plaintiff's evidence, was adequate.  In *Merseal v. Farm Bureau Town & Country Ins. Co.*, 396 S.W.3d 467 (Mo. App. E.D. 2013), the Eastern District held that a defendant had adequately preserved its directed-verdict arguments, where it stated at the close of plaintiff's evidence that it was "'incorporat[ing] by reference all the arguments set forth in written fashion in [defendant's] motion for summary judgment.'"  *Id.* at 471.  Then, at the

close of all of the evidence, defense counsel merely stated that its arguments were "identical" to those it had made in its earlier directed-verdict motion. *Id.* Although the Court acknowledged that the defendant's arguments "could have been more explicitly stated," the oral motions were sufficient since "[a]ll parties were aware of the specific issues" the defendant intended to raise. *Id.* The same is true here.

**B.**

Because the issues were adequately preserved, we turn to the merits of DOC's submissibility claim.

> The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict. When reviewing a circuit court's denial of a judgment notwithstanding the verdict, this Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability. Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion.

*City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 748 (Mo. 2016) (cleaned up).

> A successful claim of a hostile work environment requires the plaintiff to show: (1) she is a member of a group protected under the MHRA; (2) she was subjected to "unwelcome . . . harassment"; (3) the plaintiff's membership in the protected group was a contributing factor[3] in the harassment; and (4) a term, condition, or

---

[3] The legislature's 2017 amendments to the Missouri Human Rights Act replaced the "contributing factor" causation standard with a "motivating factor" test. *Compare Daugherty v. City of Md. Heights*, 231 S.W.3d 814, 820 (Mo. 2007)

11

> privilege of the plaintiff's employment was affected by the
> harassment.

*Clark v. AT&T Mobility Servs., L.L.C.*, 623 S.W.3d 197, 205 (Mo. App. W.D. 2021) (quoting *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 748 (Mo. App. E.D. 2020)).

On appeal, DOC challenges the sufficiency of Young's evidence only with respect to the fourth element of a sexual harassment claim: that the harassment affected a term, condition, or privilege of her employment. The Missouri Supreme Court recently explained that "[c]onduct 'creates a hostile work environment when [discriminatory] conduct **either** creates an intimidating, hostile or offensive work environment **or** has the purpose or effect of unreasonably interfering with an individual's work performance.'" *Matthews v. Harley-Davidson*, No. SC100116, 2024 WL 340944 at *4 (Mo. Jan. 30, 2024) (citation omitted). The Court continued:

> Discriminatory harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or pervasive [enough] to alter the conditions of the [claimant]'s employment and create an abusive working environment." The harassing conduct must be severe and pervasive enough to create a hostile or abusive working environment as viewed subjectively by the claimant and as viewed objectively by a reasonable person. "A [claimant] can show that harassment affected a term, condition, or privilege of her employment by showing a tangible employment action, or an abusive working environment."

(concluding that "the 'contributing factor' language used in [a pattern jury instruction] is consistent with the plain meaning of the MHRA"), *with* § 231.010(2), RSMo Cum. Supp. 2023 (defining "because of" to mean that "the protected criterion was the motivating factor"), and § 213.101.4, RSMo Cum. Supp. 2023 (expressly abrogating *Daugherty* "and its progeny as they relate to the contributing factor standard"). Because the claim at issue involves conduct which occurred before August 28, 2017, the pre-August 28, 2017 causation standard continues to apply. *See Miller-Weaver v. Dieomatic Inc.*, 657 S.W.3d 245, 253-55 (Mo. App. W.D. 2022); *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794-95 (Mo. App. W.D. 2018*).

12

> "In assessing the hostility of an environment, [the Court] look[s] to the totality of the circumstances."

*Id.* at *5 (citations omitted); *see also, e.g.*, *Clark*, 623 S.W.3d at 205; *McGaughy*, 604 S.W.3d at 748. In analyzing the totality of the circumstances, salient factors "includ[e] the frequency and severity of the harassing behavior, the extent to which it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance." *M.W. by & through K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 412 (Mo. App. E.D. 2020).

> The standard for proving this fourth element is demanding. The harassing conduct must be "so intimidating, offensive, or hostile that it poisoned the work environment and that the workplace was permeated with discriminatory intimidation, ridicule, and insult," both viewed subjectively by the plaintiff and viewed objectively by a reasonable person.

*Id.* at 410 (citations omitted).

While the severity or pervasiveness of harassing conduct is generally a question for a jury, "some inappropriate behavior objectively does not rise to the level of actionable harassment as a matter of law." *Id.* at 411. Thus, in *Bracely-Mosley v. Hunter Engineering Co.*, 662 S.W.3d 806 (Mo. App. E.D. 2023), the Eastern District recently affirmed a grant of summary judgment to an employer on a sexual harassment claim. In *Bracely-Mosley*, a male employee had "'swiped' [the female plaintiff-]Appellant's behind with a cardboard box" in the workplace in August 2016, leading her to advise the perpetrator: "you're getting ready to get hit. Don't touch me." *Id.* at 811-12. Then, five months later in January 2017, Appellant turned around at her work station to find the same male employee "with his hand cupped near Appellant's left breast. Had Appellant walked forward, her breast would have been in [the male employee's] hand. Appellant

jumped back saying, 'Don't touch me.'" *Id.* at 812. Later that evening, the male perpetrator texted the plaintiff to "[g]o home, get some sleep, and you need to stop watching porn." *Id.*

The Appellant testified that she was deeply affected by these incidents:

> After the January 2017 incident, Appellant lost sleep and could not concentrate or focus. Appellant cried, was irritable and afraid, and experienced headaches. She felt [the male perpetrator's] harassment impacted her relationship with her family and she generally experienced a loss of joy in her everyday life. Appellant worried about [the male perpetrator] returning to her work space and did not feel safe at work. She did not want to go to work anymore, for anybody to talk to her, or her husband to touch her. Appellant was always jumpy when people passed by. Supervisor told other employees to give Appellant notice before approaching her to avoid startling her.

> On January 25, 2017, Appellant sought medical treatment. Appellant experienced stomach cramps, diarrhea, inability to eat, loss of appetite, vomiting, and weight loss. Her doctor recommended she take medical leave.

*Id.* at 813.

The incidents in *Bracely-Mosley* involved direct interaction between the Appellant and the male perpetrator, involved physical contact or threatened physical contact, and caused the Appellant to experience mental and physical conditions for which she sought medical treatment. The Eastern District recognized that "a genuine dispute exists regarding whether Appellant *subjectively* viewed Henke's conduct as sufficiently severe to create a hostile work environment." *Id.* at 818-19 (emphasis added). Nevertheless, the Court held that summary judgment was appropriate because the incidents were not *objectively* "sufficiently severe or pervasive" to support a sexual harassment claim.

[The perpetrator's] harassment could not objectively be viewed as so severe or pervasive that it altered the conditions of Appellant's employment and created a hostile, abusive work environment. [The perpetrator's] swiping a cardboard box against Appellant's buttocks as she passed by was separated by five months from his standing close to Appellant with his hand cupped near her breast. That conduct, while unacceptable, lasted only seconds. Similarly, [the perpetrator's] text to Appellant on the evening of the January 2017 incident was an offensive utterance, but it was not physically threatening and did not subject her to public humiliation. In the interim, Appellant experienced no other harassment, or any ill effects from the harassment.

The uncontroverted fact is that Appellant did not experience any physical or emotional effects until after the January 2017 incident. By that time, Employer had undertaken its investigation, spoken to the plant manager and Appellant's supervisors, and prohibited [the perpetrator] from entering Appellant's work area. For her part, Supervisor told other employees to give Appellant notice before approaching her. Ultimately, Employer found that [the perpetrator] sexually harassed Appellant, disciplined him, and warned him his employment would be terminated if he had any unauthorized contact with, or retaliated against, Appellant.

As Appellant acknowledges, hostile work environments typically are characterized by "day-to-day harassment" and its "cumulative effect." Those factors are absent here. Regardless, the two harassing incidents could not otherwise reasonably be described as "severe or pervasive," that is, grave or acute, or ubiquitous or rampant. Objectively speaking, even assuming the harassment was severe or pervasive, it could not reasonably be construed as having altered the conditions of Appellant's employment and created a discriminatorily hostile, abusive work environment. . . . [T]he harassing conduct was not so intimidating, offensive, or hostile that the work environment was poisoned and permeated with discriminatory abuse.

[The perpetrator's] conduct is intolerable in a workplace, and we fully realize the largely undisputed subjective harm his conduct inflicted on Appellant. The objective reality nonetheless is that the harassment was isolated and Employer did not tolerate it. Instead,

15

> Employer intervened before the harassment could create a hostile work environment. Our decision does not discount the subjective harm to Appellant; it simply affirms the reason there is an objective component to our analysis. While caution is warranted because summary judgment forecloses a party's day in court, . . . the MHRA and Title VII, by their terms, are not to be reduced to "general civility codes" or indiscriminate prohibitions on all "boorish, vulgar, and inappropriate" workplace conduct.

662 S.W.3d at 820 (citations omitted).

Similarly, the Eastern District affirmed the grant of summary judgment to an employer on a sexual harassment claim in *M.W.*, 605 S.W.3d 400, in which a minor female plaintiff alleged that she had been sexually harassed by two minor male co-workers during seasonal employment at an amusement park. In one incident, the two male employees locked the door of a room in which the plaintiff was working, pulled down their pants (but not their underwear), and suggested that they should all "get it on." *Id.* at 407. The male employees pulled their pants back up when the plaintiff demanded it; they then "tightly grabbed M.W. by the arms and legs," and stepped on her hair. *Id.* The next day, one of the male employees approached the plaintiff and showed her a video on his phone of another female employee engaged in oral sex with the male; when the plaintiff pushed the phone away, the male employee "proceeded to hit and 'karate chop' M.W. on the head, instructing her not to tell anyone about the video he showed her." *Id.* Although the employer's human resources department ultimately fired both of the male employees, a human resources employee told the plaintiff that "'[she] can't let those two bother [her]. They're boys. Boys are going to be boys, and it's going to happen at workplaces.'" *Id.* at 408 (footnote omitted).

Despite the overtly sexual, and physically violent, nature of the underlying incidents in *M.W.*, the Eastern District held that summary judgment was

16

properly granted for the employer, because the harassment was not *objectively* severe or pervasive enough to support a claim.

> The [underlying] incidents, in addition to [the Human Resources employee's] comments during the ensuing investigation, were undeniably inappropriate and should not be tolerated in the workplace – especially a workplace that employs minors. However, this conduct was limited to three brief instances of no more than a few minutes each, occurred over the span of four consecutive days during the first season of M.W.'s employment, and was largely on the part of one co-worker.

> There is no evidence that M.W. experienced any other harassing conduct over the course of her nearly eight months of employment at Six Flags. [The various incidents and comments] are not so severe and pervasive such that a reasonable person would objectively find M.W.'s workplace poisoned or hostile.

*Id.* at 413 (citations omitted); *see also Moore v. Southwestern Bell Tel. Co.,* 684 S.W.3d 187 (Mo. App. E.D. 2023) (employee's "general testimony" concerning supervisor's "overbearing behaviors," including "questioning her clothing," was insufficient to create triable issue that supervisor's actions "amounted to incidents of severe and pervasive harassment").

Young's claim for pre-August 28, 2017 sexual harassment cannot be sustained under these legal standards. Young's harassment claim is primarily based on a single incident: Harassing Officer calling her a "fat-ass cunt" on November 9, 2016. The November 2016 comment was undeniably offensive, and inappropriate in the workplace. Moreover, Young offered testimony, which we presume the jury credited, that the comment had a significant emotional effect upon her as word of it spread around KCRC. Nevertheless, under the caselaw discussed above, we cannot find that this single comment was *objectively*

17

sufficiently severe or pervasive that it altered the conditions of Young's employment, or created an abusive working environment.

Several considerations undermine Young's harassment claim. Harassing Officer's comment cannot be considered "pervasive," when it was made only once. While Young testified that the Complaining Officer, and other inmates, informed her of Harassing Officer's comment, they expressed sympathy with Young, and offered to seek redress for Harassing Officer's comment through the internal complaint process. Young's conversations with the Complaining Officer, and with other inmates, concerning Harassing Officer's statement themselves cannot be considered unwelcome harassment. Further, although Young testified that she had heard another officer testify, *during trial*, that Lieutenant had also referred to her as a "cunt," she only acquired knowledge of Lieutenant's vulgar comments years after her employment at DOC ended. Young could only be subjected to a hostile work environment, however, based on conduct or statements of which she was *aware* during her employment. *See*, *e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210-11 (4th Cir. 2019) (collecting cases involving harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014) (same).

Nor can Harassing Officer's single statement be considered sufficiently severe to have created a hostile work environment. Harassing Officer's comment was not made directly to Young, and there is no indication that Harassing Officer intended that Young ever learn of it. Harassing Officer was apparently complaining to peers about someone he considered to be an unreasonable boss –

18

albeit using extremely vulgar, gender-based language. Further, the fact that Harassing Officer was Young's subordinate, rather than a supervisory employee, also diminishes the objective severity of the comment. *M.W.*, 605 S.W.3d at 413 ("'acts of supervisors have greater power to alter the environment than acts of coemployees generally'"; quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998)). Moreover, unlike in the cases discussed above, Harassing Officer's conduct did not describe, invite, or threaten violent or sexual acts.

Young contends that her pre-August 28, 2017 harassment claim is supported by evidence of additional offensive conduct. Thus, Young's briefing relies heavily on statements made and actions taken by Lieutenant. Young's argument ignores, however, that the circuit court dismissed her claims involving Lieutenant's conduct prior to June 2, 2017 – a ruling she does not challenge. Moreover, much of the other behavior to which Young points (such as Lieutenant's comments or discriminatory actions) was not based on Young's gender or sex, but instead on her race or national origin. But her pre-August 28, 2017 harassment claim was founded on *gender-based* harassment, not harassment based on race or national origin. Young also points to another CO-I officer calling her "Africa" over the radio. But beyond being a race- or national-origin-based comment, this comment occurred after August 28, 2017, and formed part of the basis for Young's *post-August 28, 2017* harassment claim, on which the jury separately awarded her damages. This comment cannot support a *separate* harassment claim, involving a *separate* time period.

For all of the foregoing reasons, DOC was entitled to judgment notwithstanding the verdict on Young's claim for pre-August 28, 2017

harassment. Point I is granted. Because we have concluded that the Department is entitled to judgment on Young's claim for pre-August 28, 2017 harassment, the Department's separate challenge in Point III to the punitive damages awarded on that claim is moot.

## II.

In its second Point, MDOC argues that the circuit court erred in applying a 1.5 multiplier in calculating the attorney's fees to be awarded to Young.

Young's counsel conceded at argument that, if we reversed the judgment for Young on her claim for pre-August 28, 2017 harassment, we would necessarily be required to reverse the circuit court's award of attorney's fees, and remand to the circuit court for further consideration. We agree that the fee award must be reversed and remanded, because in making its award the circuit court was entitled to consider "the result obtained," and "the extent to which a plaintiff prevailed on some claims and not on others," among other factors. *Alhalabi v. Mo. Dep't of Corr.*, 662 S.W.3d 180, 194-95 (Mo. App. W.D. 2023) (citations omitted).

## Conclusion

The circuit court's judgment on Young's claim for pre-August 28, 2017 gender-based harassment, and the court's award of attorney's fees, are reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion. Young's motion for attorney's fees on appeal, which she filed in this Court, is denied, as that motion was expressly contingent on Young prevailing on appeal.

_____
Alok Ahuja, Judge

All concur.